506 So.2d 426 (1987)
VILLAGE PARK MOBILE HOME ASSOCIATION, INC., a Florida Corporation, Alice Mallanda, Kenneth Byers and Billie Byers, Appellants,
v.
STATE of Florida, DEPARTMENT OF BUSINESS REGULATION, DIVISION OF FLORIDA LAND SALES, CONDOMINIUMS AND MOBILE HOMES, Appellees.
No. BK-219.
District Court of Appeal of Florida, First District.
January 20, 1987.
On Motion for Rehearing May 8, 1987.
Nancy A. Trease, Fort Lauderdale, for appellants.
John C. Courtney, Deputy Gen. Counsel, and Robin H. Conner, Dept. of Business Regulation, for appellees.
*427 NIMMONS, Judge.
This is an appeal from a final order of the Department of Business Regulation, Division of Land Sales, Condominiums and Mobile Homes ("Division"), denying appellants' "Petition to Initiate Formal Proceedings" pursuant to Section 120.57(1), Florida Statutes. We affirm.
Appellants are individual residents of the Village Park Mobile Home Estates and an association of residents of that mobile home park. They requested a hearing concerning the Division's approval of a prospectus submitted to the Division by the owner of the park in which appellants reside. Such submission is required under the Florida Mobile Home Act[1] by Section 723.011(1), Florida Statutes (1984 Supp.), which states that the mobile home park owner must file with the Division a prospectus outlining the terms and conditions of park residence. The Division is required by Section 723.011(1)(b) to determine whether the prospectus is adequate to meet the requirements of the Florida Mobile Home Act (sometimes referred to herein as the "Act"). The Division is further required under this section to notify the park owner of its approval or the specific deficiencies precluding approval.
The Division approved the prospectus submitted by the park owner on September 9, 1985 and notified the latter of its approval. Shortly thereafter, the appellants were given copies of the approved prospectus by the park owner. Appellants subsequently filed with the Division their Petition to Initiate Formal Proceedings.
In their Petition, appellants alleged that the Division should not have approved the proposed prospectus because, they contended, the terms of the proposed prospectus greatly increased the cost of residence at the park, substantially reduced services previously provided by the park owner, and greatly modified the terms under which appellants had previously resided in the park. Appellants further alleged that certain terms of the prospectus were unconscionable. Finally, appellants claimed that, as imposed upon mobile home owners already residing in the park, the proposed prospectus would be an unconstitutional impairment of the obligation of contract.
The Division's final order denying appellants' petition found that neither the Act nor the rules promulgated thereunder contemplated participation by the home owners in the prospectus review process, that the petition was defective insofar as it requested a formal proceeding pursuant to Section 120.57(1) while failing to set forth any disputed issues of material fact, that appellants had not demonstrated that their substantial interests had been determined by the agency in the prospectus review process, that appellants had no standing to participate in the prospectus review process, and that, since specific statutory remedies are provided with regard to rental increases or decreases in services when actually threatened, those remedies must be pursued in lieu of participation in the prospectus review process. In addition, the final order determined that as to appellants the Division's approval of the proposed prospectus submitted by the park owner did not constitute final agency action because, by agency rule, a determination regarding the adequacy of a proposed prospectus does not preclude the agency from pursuing violations of the Act via administrative enforcement proceedings.
The principal issue in this case is whether the appellants were entitled to participate in the prospectus review process. In denying appellants' petition for a Section 120.57 hearing, the Division concluded that the home owners were not so entitled. We agree with the Division's conclusion and accordingly hold that the Division did not err in denying appellants' petition.
An overview of the Florida Mobile Home Act is helpful to an understanding of the issues presented in this appeal. Of particular importance is an understanding of the *428 functions of the prospectus in the legal relationship between park owner and home owner and the statutory role of the Division in the prospectus review process. Also noteworthy are the statutory mechanisms by which rental increases are proposed and effectuated, and the mechanisms by which services to the park are reduced.
Prior to the enactment of Chapter 723, tenancies between a mobile home park owner and mobile home owners were regulated to an extent by Part 3 of Chapter 83, Florida Statutes, known as the "Mobile Home Landlord and Tenant Act." That Act made no provision for any type of prospectus. It was only with the enactment in 1984[2] of the current Chapter 723 that a prospectus or offering circular was required to be provided to prospective lessees and to current lessees upon renewal of an existing leasehold. See Section 723.011, Florida Statutes.
The prospectus is fundamentally a disclosure document. As required by Section 723.012, the prospectus, as drafted by the park owner, must contain certain information and exhibits, including a description of the mobile home park property (Section 723.012(4)(c)), a description of the recreational and other common facilities to be used by the home owners (Section 723.012(5)), the arrangements for management of the park and maintenance and operation of the park property (Section 723.012(6)), a description of all improvements which are required to be installed by the mobile home owner (Section 723.012(7)), a description of the manner in which utility and other services will be provided to the home owners (Section 723.012(8)), an explanation of the manner in which rents and other charges will be raised, including 90 days advance notice and disclosure of any rate increase or pass-through charges, and any other fees, costs or charges to which the home owner may be subjected (Section 723.012(9)), and an explanation of the manner in which park rules or regulations will be set, changed or promulgated, including park regulations currently in effect (Section 723.012(10)).
The Act requires that the prospectus contain as exhibits any ground lease which may be in effect, covenants and restrictions affecting the park property, and a copy of the rental agreement which will be offered by the park owner in the rental of mobile home lots (Section 723.012(13)). As may be seen from the above statutory analysis, the purpose of the prospectus is to disclose to prospective lessees certain information regarding the future operation of a mobile home park.
Section 723.011 sets forth certain pertinent provisions relating to prospectuses, including the following:
723.011 Disclosure prior to rental of a mobile home lot; prospectus filing, approval. 
(1)(a) Every mobile home park owner of a park which contains 26 or more lots[3] shall file a prospectus or offering circular with the division prior to entering into an enforceable rental agreement.
(b) The division shall determine whether the proposed prospectus or offering circular is adequate to meet the requirements of this chapter and shall notify the park owner by mail, within 45 days of receipt of the document, that the division has either approved the prospectus or offering circular or found specified deficiencies.
(c) The division shall prepare a form prospectus . .. .
* * * * * *
(2) The park owner shall furnish a copy of the prospectus or offering circular together with all the exhibits thereto to each prospective lessee. Delivery shall be made upon execution of a rental agreement or at the time of occupancy, whichever occurs first. However, the park owner is not required to furnish a copy of the prospectus or offering circular if the tenancy is a renewal of tenancy and the mobile home owner has previously *429 received the prospectus or offering circular.
(3) With regard to a tenancy in existence on the effective date of this chapter, the prospectus or offering circular offered by the mobile home park owner shall contain the same terms and conditions as rental agreements offered to all other mobile home owners residing in the park on the effective date of this act, excepting only rent variations based upon lot location and size, and shall not require any mobile home owner to install any permanent improvements.
As may be seen from the above Section, a prospectus is given only to prospective lessees and to tenants upon renewal of an existing rental agreement. See also Rule 7D-31.01(13), Florida Administrative Code, for similar provisions. Therefore, the Act does not require that the prospectus be given to existing tenants except upon renewal of an existing rental agreement. Thus, tenancies in existence upon the effective date of the Act continue according to the terms and conditions set forth in the rental agreements; it is only upon renewal or the entering into of a new lease that the prospectus provisions of the Act are implicated.
As set forth in Section 723.011, park owners, prior to entering into a new rental agreement or the renewal of an existing agreement, must file a proposed prospectus with the Division. The Division is charged with the responsibility of determining whether the proposed prospectus meets the requirements of Chapter 723, and the Division is statutorily required, within 45 days of receipt of the document, to either approve the prospectus or cite deficiencies. Further, the Act provides that the Division "shall notify the park owner by mail" of approval or rejection. Section 723.011(1)(b); Rule 7D-30.03, Florida Administrative Code. However, failure of the Division to notify the park owner of any deficiencies in the prospectus does not relieve the park owner of its statutory duties and responsibilities under the Act. See Rule 7D-30.03, Florida Administrative Code.
As previously stated, the prospectus is to contain the procedure whereby future rental increases are to be proposed, challenged, and resolved. Section 723.012(9). This section, in conjunction with Rule 7D-31.01(6), Florida Administrative Code, requires that the prospectus disclose each type of charge to be paid by the home owner and a description of all factors which may result in an increase in those charges to the home owners. Section 723.037, Florida Statutes, which governs actual lot rental increase proposals, contains the 90-day advance notice requirement prior to any reduction in services, increase in rent, or change in rules and regulations. See also, Rule 32.02, Florida Administrative Code (governing the Notice of Lot Rental Increase and providing that only those factors specifically identified in the prospectus may form the basis of a proposed rate increase). According to Section 723.037(2), once the written notice is given by the park owner, a committee or a home owners' association shall meet with the park owner to discuss the intended change and, according to subsection (3), within 15 days of the meeting, the home owners, if they decide to contest the change, shall request that the dispute be submitted to mediation pursuant to Section 723.038 if a majority of the home owners have stated, in writing, that the rental increase is unreasonable, the decrease in services was not accompanied by a corresponding decrease in rent, or the change in rules or regulations is unreasonable. According to the Act, if both parties subsequently agree, arbitration rather than mediation may be requested. Division rules regulating mediation and arbitration are contained in Chapters 7D-32 and 7D-33, Florida Administrative Code.
According to Section 723.037(5), no dispute regarding lot rental increases, reduction in services or utilities, or proposed changes in rules or regulations may be filed in the circuit court unless and until a request for mediation or arbitration has been submitted to the Division. Subsection (6) provides that if a party refuses to mediate or arbitrate, that party, upon proper request, shall not be entitled to attorneys' fees in any action related to the dispute. *430 Finally, Section 723.038(2) provides that, unless otherwise agreed by the parties, mediation and arbitration is not binding and no resolution of the dispute shall be deemed final agency action.
Our reading of the Florida Mobile Home Act persuades us that the legislature contemplated exclusive participation in the prospectus review process by park owners.
Suwannee River Area Council of Boy Scouts of America v. State of Florida, Department of Community Affairs, 384 So.2d 1369 (Fla. 1st DCA 1980) is instructive. There, the agency determined that the legislature did not specify or intend that third persons, including the Boy Scout Council (an adjacent property owner), be given the right to participate as a party in a binding letter proceeding to determine whether a development was one of regional impact. This court upheld the agency's order precluding such participation. Similarly, appellants in the instant case can point to no provision of the Mobile Home Act which contemplates participation in the prospectus review process by home owners. Appellants, however, assert that, unlike the instant case, the Council in Suwannee River was given notice of the proceedings and had an opportunity to comment prior to the issuance of a binding letter by the agency. However, we would note that prospectus review by the Division is not binding, at least in that, notwithstanding approval of the prospectus, the park owner must still comply with the various statutory requirements of Chapter 723 and a park owner may place no provision in the prospectus which circumvents his duties and responsibilities under Chapter 723. And if an approved prospectus does contain such a provision, enforcement proceedings may be instituted as contemplated by Chapter 723.
Appellants have failed to establish that prospectus review by the Division affected their substantial interests. As stated in Agrico Chemical Company v. Department of Environmental Regulation, 406 So.2d 478 (Fla. 2nd DCA 1981):
[B]efore one can be considered to have a substantial interest in the outcome of the proceeding he must show 1) that he will suffer injury in fact which is of sufficient immediacy to entitle him to a section 120.57 hearing, and 2) that his substantial injury is of a type or nature which the proceeding is designed to protect. The first aspect of the test deals with the degree of injury. The second deals with the nature of the injury.
Id. at 482. Appellants assert that their substantial interests were affected by the Division's approval of the prospectus. They say that the approval of the prospectus immediately made the park less attractive to potential purchasers of their mobile homes and thereby affected the value and marketability of their homes. Appellants also allege that certain provisions of the prospectus may have a chilling effect upon the residents' resolution of any grievances against the park owner inasmuch as the homeowners may be required to pay certain expenses incurred by the park owner in such actions.
Such allegations are insufficient to meet the requirement for standing under Agrico. First, appellants have not demonstrated any immediate injury in fact. Appellants' concerns are speculative. In regard to the first allegation of injury, the record gives no indication that any homes have been offered for sale, have been sold, or that home owners have been unable to sell their homes due to the provisions contained in the prospectus. In regard to the second allegation of injury, appellants have not shown that the approval of the prospectus will prevent them from enforcing their rights under the Florida Mobile Home Act. They merely suggest that certain provisions of the prospectus may have a chilling effect upon their rights.
Appellants also fail to show that their injury is of a type which the proceeding is designed to protect. Participation in the review of a prospectus would do nothing to prevent injury. In the event that appellants suffer injury in the future, ample recourse is provided through the several remedial provisions of the Act which are designed to protect homeowners aggrieved by violations of Chapter 723. The Act provides for: (1) the enforcement of rights or *431 duties under certain sections of the Act by civil action after the party has exhausted its administrative remedies, if any (Section 723.004(4)); (2) powers and duties of the Division including investigatory powers and the duty to institute enforcement proceedings in its own name (Section 723.006); (3) the obligation of good faith and fair dealings in rental agreements (Section 723.021); (4) regulations as to the mobile home lot rental agreement (Section 723.031); (5) provisions for unconscionable lot rental agreements (Section 723.033); (6) mediation or arbitration provisions concerning lot rental increases, reduction in services or utilities, or changes in rules or regulations (Section 723.037); and (7) dispute settlements (Section 723.038).
Secondly, the prospectus approval by the Division does not constitute final agency action as to the appellants. Notwithstanding prospectus approval, park owners must still comply with the various provisions of the Act. Under the statute, the Division may make investigations into allegations of noncompliance with the Act, and rental increases or reduction of services remain subject to Section 723.037, Florida Statutes. No action by the Division in regard to prospectus approval is binding on the appellants and thus, as to the appellants, no finality has been demonstrated such as to warrant a Section 120.57 hearing.
Nevertheless, appellants maintain they are entitled to standing to participate in the prospectus review process because the Division's interpretation of the Florida Mobile Home Act would result in an unconstitutional impairment of contract. Appellants argue that the prospectus submitted to the Division by the park owner was in contradiction to the appellants' previous understanding with the park owner on a number of material terms. Specifically, they contend, in the prospectus the park owner was attempting to renege on certain commitments concerning facilities to be provided at the park. The prospectus reflected an intent by the park owner to charge residents separately for charges previously included in their rent, and to increase the lot rental at the park based upon variables so far-ranging as to be meaningless. According to appellants, by the alteration of the terms of existing agreements, the prospectus impermissibly affects the substantial rights of mobile homeowners already residing in the park.
We disagree. To the extent that the terms and conditions of the prospectus may, if enforced, be violative of existing contractual rights of park residents, the fact that the Division may have approved the park owner's new prospectus does not eliminate the residents' legal rights to seek redress for such violations. The proper forum for such redress, however, is not the Division's prospectus review apparatus.
AFFIRMED.
JOANOS and THOMPSON, JJ., concur.

ON MOTION FOR REHEARING
NIMMONS, Judge.
Appellants have filed a Motion for Rehearing, essentially challenging this Court's ruling that appellants had failed to demonstrate any injury-in-fact of sufficient immediacy to entitle them to a Section 120.57 hearing. Although we deny the motion for rehearing, we address several of appellant's arguments raised in their motion.
Appellants assert that our requirement of a showing of injury-in-fact was incorrect in that appellants were required to prove the truth of their allegations in their pleadings, and further that the standard regarding injury-in-fact, articulated in Agrico Chemical Co. v. Department of Environmental Regulation, 406 So.2d 478 (Fla. 2d DCA 1981) and upon which we relied in our opinion, is in conflict with standards articulated by this Court in Professional Firefighters of Florida, Inc. v. Department of Health & Rehabilitative Services, State of Florida, 396 So.2d 1194 (Fla. 1st DCA 1981). However, appellants have misinterpreted our opinion in the instant case. We trust that this opinion on the motion for rehearing will clarify the Court's position.
Section 120.57 requires that a person petitioning for a formal hearing demonstrate that his substantial interests will be affected *432 by the challenged agency action. In determining whether appellants' substantial interests were affected, we properly relied upon the standards set forth in Agrico. Agrico addressed the issue of standing in a context similar to the present case. In Agrico, competitors of an applicant for a construction permit sought to interfere in the administrative permitting procedure. The instant case involved an attempt by third parties to become involved in an administrative procedure, namely, the prospectus review process.
Agrico established that under such circumstances, before one can be considered to have a substantial interest in the outcome of a proceeding, he must show: (1) that he will suffer injury-in-fact which is of sufficient immediacy to entitle him to a Section 120.57 hearing, and; (2) that his substantial injury is of a type or nature which the proceeding is designed to protect.
Appellants assert that the injury-in-fact standards set forth in Agrico and relied upon by this Court in its original opinion are in conflict with this Court's decision in Firefighters. It should be noted at the outset that this Court in Firefighters addressed the issue of standing in a context slightly different from the instant case. Firefighters involved the issue of standing in the context of a Section 120.56 rule challenge. Nevertheless, the standard utilized by the Court in Firefighters is instructive on the injury-in-fact standard set forth in Agrico.
In Firefighters, a firefighter association, claiming to represent certain of its members who were paramedics practicing their profession without the benefit of a new licensing requirement, appealed from a DOAH order dismissing their petition for lack of standing to challenge the validity of HRS rules and rule-making procedures concerning regulations pertaining to the licensing of paramedics. The issue in the case was whether the appellants met the "substantially affected" test of Section 120.56, which provides that any person "substantially affected" by an agency rule may seek an administrative determination of whether the rule is a valid exercise of delegated legislative authority. The hearing officer concluded that the appellants did not have standing under the statute because appellants had not complied with the rule to their peril. This Court held that the APA does not require that an affected party comply with a rule at his peril in order to obtain standing to challenge the rule. Rather, we held that a "party may demonstrate standing by showing that a rule has a real and immediate effect upon his case, as well as by proving injury-in-fact." 396 So.2d at 1195, 1196. Under the facts of Firefighters, we found that the rules governing licensing procedures promulgated by the agency substantially affected the individual appellants by rendering their continued employment as paramedics unlawful without compliance with the licensing requirements. The individual appellants were affected by the licensing rules because they worked in the area to be regulated. The Court found that there was a "clear, direct effect on those concerned individuals being able to continue to earn their livelihood." Id. at 1196.
Contrary to appellants' assertions, the standing test stated in Firefighters is analogous to the injury-in-fact standard in Agrico. Agrico requires that a party show that he will suffer an immediate injury as a result of the agency action. This requirement is similar to the requirement in Fire Fighters that a party can demonstrate standing by showing that a rule has a real and immediate effect upon his case, as well as injury-in-fact.
Another case which serves to illuminate the Agrico injury-in-fact standard is Florida Department of Rehabilitation v. Jerry, 353 So.2d 1230 (Fla. 1st DCA 1978). That case, like Firefighters, addressed the issue of standing in the context of a Section 120.56 rule challenge. Jerry, an inmate in a state prison facility and the subject of a disciplinary action, challenged a rule of the Department which imposed confinement and a loss of gain-time for the offending conduct. At the time he brought the declaratory proceeding, he had served his disciplinary confinement but did not *433 establish that he had lost any statutory gain-time. This Court reversed the hearing officer's declaration that the rule was invalid on the ground that Jerry lacked "standing" to invoke the section 120.56 process. This Court recognized that Jerry's prospects of future injury rested on the likelihood that he would again be subjected to disciplinary confinement because of possible future infractions of the challenged rule. Whether this would occur would be a matter of speculation and conjecture.
As recognized by this Court in Jerry, abstract injury is not enough. The injury or threat of injury must be both real and immediate, not conjectural or hypothetical. A petitioner must allege that he has sustained or is immediately in danger of sustaining some direct injury as a result of the challenged official conduct. See O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) and Jerry, 353 So.2d at 1235. The court in Jerry therefore concluded that a petitioner's allegations must be of "sufficient immediacy and reality" to confer standing.
Accordingly, our construction of Agrico, Firefighters, and Jerry leads us to the conclusion that a petitioner can satisfy the injury-in-fact standard set forth in Agrico by demonstrating in his petition either: (1) that he had sustained actual injury in fact at the time of filing his petition; or (2) that he is immediately in danger of sustaining some direct injury as a result of the challenged agency's action.
In the instant case, appellants, at the time they filed their petition, had failed to demonstrate through their allegations that they had sustained either actual injury-infact or that they were in danger of sustaining some direct injury as a result of the agency's action. In their pleadings, appellants alleged that they had been immediately injured in fact in that "[t]he 1985 prospectus greatly increases the cost of residence at the park, substantially reduces services previously provided by the park owner, and greatly modifies the terms under which petitioners had previously resided in the park." Appellants also alleged that they would be injured in the future in that the 1985 prospectus would "directly affect the resale value and marketability of petitioners' mobile homes by making park occupancy more expensive and less attractive."
The very nature of the prospectus, the prospectus review process, and the terms of the Mobile Home Act itself demonstrate that appellants' allegations are insufficient to show that they had sustained or were in immediate danger of sustaining some direct injury as a result of the agency's approval of the prospectus. First, as stated in our opinion, the prospectus is essentially a disclosure document. The purpose of the prospectus is to disclose to prospective lessees certain information regarding the future operation of a mobile home park. As required by Section 723.021, Florida Statutes (1983), the prospectus gives an explanation of the manner in which rents and other charges will be raised, including 90 days' advance notice and disclosure of any rate increase or pass-through charges, and any other fees, costs or charges to which the homeowner may be subjected, a description of the manner in which utility and other services will be provided to homeowners, and an explanation of the manner in which park rules and regulations will be set, changed or promulgated. The agency reviews the terms of the prospectus only to ensure that it satisfies the statutory requirements of Chapter 723.
All of this indicates that the approval of the prospectus does not automatically result in the increase of rents, reduction in services, or changes in park rules or regulations. Rather, it is the implementation of the provisions of the prospectus by the park owner which may result in a rent increase, reduction in services, or a change in park rules. Thus, in the event that any harm is suffered, it will result from the implementation of the provisions contained in the prospectus and not from agency approval of the prospectus.
Moreover, as recognized in our opinion, the Mobile Home Act provides that in the event of an actual rent increase, actual reduction in services, or actual change in rules, the park owner is to give written *434 notice to each mobile homeowner at least 90 days prior to any lot rental increase, reduction in services or utilities, or change in rules or regulations. According to Section 723.037(2), Florida Statutes, once the written notice is given by the park owner, a committee or a homeowners' association shall meet with the park owner to discuss the intended changes. According to subsection (3), within 15 days of the meeting, the homeowners, if they decide to contest the change, shall request that the dispute be submitted to mediation pursuant to Section 723.038 if a majority of the homeowners have stated, in writing, that the rental increase is unreasonable, the decrease in services was not accompanied by a corresponding decrease in rent, or the changes in rules or regulations are unreasonable. According to the Act, if those parties subsequently agree, arbitration rather than mediation may be requested. Division rules regulating mediation and arbitration are contained in Chapters 7D-32 and 7D-33, Florida Administrative Code.
Appellants' assertion that they had actually suffered injury-in-fact immediately upon agency approval of the prospectus is a logical impossibility in view of the nature of the prospectus, the prospectus review process, and the terms of the Mobile Home Act set forth above. In fact, appellants admit in their motion for rehearing that none of the specific instances relating to the injuries they alleged, i.e., diminution in value of homes in the park and sale price of mobile homes after the prospectus provisions took effect, could have been known at the time they filed their petition. Moreover, the prospect of any injury to the appellants rests on the likelihood that the park owner will implement the provisions of the prospectus and that any rental increases, reduction in services, or change in park rules will survive the mediation/arbitration process of the Mobile Home Act. Attempting to anticipate whether and when these events will transpire takes us into the area of speculation and conjecture. The threat of injury alleged by appellants is not of sufficient immediacy and reality to warrant invocation of the administrative review process. See Florida Department of Offender Rehabilitation v. Jerry, supra.
Appellants have not been able to demonstrate that they had in fact been injured or were in immediate danger of sustaining some direct injury as a result of the agency's approval of the prospectus. Accordingly, appellants' Motion for Rehearing is DENIED.
JOANOS and THOMPSON, JJ., concur.
NOTES
[1] Chapter 723, Florida Statutes (1984 Supp.). Unless otherwise indicated, references in this opinion to pertinent sections of Chapter 723 shall be to the 1984 Supplement of Florida Statutes.
[2] Chapter 84-80, Laws of Florida.
[3] Those park owners not required to provide a prospectus must provide certain disclosure information as required by Section 723.013.