595 So.2d 148 (1992)
Alfred HERRICK, d/b/a Tan Tara Mobile Home Park, Appellant,
v.
FLORIDA DEPARTMENT OF BUSINESS REGULATION, DIVISION OF FLORIDA LAND SALES, CONDOMINIUMS AND MOBILE HOMES, Appellee.
No. 90-2057.
District Court of Appeal of Florida, First District.
February 19, 1992.
*149 David D. Eastman of Parker, Skelding, Labasky & Corry, Tallahassee, for appellant.
Susan C. Marvin, Asst. Gen. Counsel, Dept. of Business Regulation, Tallahassee, for appellee.
Thomas A. Munkittrick, for amicus curiae, Federation of Mobile Home Owners of Florida, Inc., Largo.
JOANOS, Chief Judge.
Alfred Herrick (Herrick), owner of Tan Tara Mobile Home Park, appeals a final administrative order issued by the Division of Florida Land Sales, Condominiums, and Mobile Homes (Division), finding Herrick in violation of section 723.031(5) and (6), Florida Statutes. Herrick alleges error in the Division's determination that he improperly charged tenants in Tan Tara Mobile Home Park for water, sewer, and waste disposal when such charges were not disclosed prior to occupancy. We affirm, the order as modified.
The essential facts in this case are undisputed, and indeed, Herrick has stipulated to the operative facts, i.e., that he increased charges collected from park tenants twice in one year, that he changed the manner in which he assessed park tenants for water, and that water, sewage, and garbage charges had not been collected on an individual basis in the past as a matter of custom. Thus, it is the legal effect of Herrick's conduct which is at issue in this case, rather than the conduct itself.
On May 5, 1989, the Division issued a notice to show cause against Herrick, charging that the park owner (1) violated section 723.031(5), Florida Statutes, by increasing the lot rental amount on January 1, 1987, and again on October 1, 1987; and (2) violated section 723.031(6), Florida Statutes, by collecting charges for water, sewage, and waste disposal, which charges were not disclosed prior to tenancy and had not been collected as a matter of custom between the park owner and at least one homeowner. Herrick petitioned for a formal hearing, and the matter was referred to the Division of Administrative Hearings, and heard on November 6, 1989.
Tan Tara Mobile Home Park is located in Melbourne; the owner's business and residence is in Ithaca, New York. There are eighty-four lots in the park; nineteen of these lots were leased after November 1, 1986. When Herrick bought the park in 1980, water and sewer charges were included as part of the rent. The former owner cautioned Herrick that water was being wasted in the park, and that he should include the water use in the rent. Initially, Herrick calculated water and sewer use to be added to the lot rental charge by dividing the total bill he received from the water company by the number of homes in the park. That charge came to $12.50 per home.
Pursuant to the 1984 enactment of Chapter 723, Herrick filed and received approval of a park prospectus on December 23, 1985. The prospectus constitutes the disclosure document provided to the tenants. The Tan Tara prospectus was delivered to all tenants living in the park, beginning in January 1986. Pertinent portions of the *150 Tan Tara prospectus pertaining to charges which may be included in the lot rental fee provide:
VII. UTILITY AND OTHER SERVICES

Water  Treated drinking water is provided by the City of Melbourne Utilities and is provided to each mobile home site. The charge for this service is currently included in the tenants' total monthly rental fee... . .

Sewage  Sewage disposal is provided by the City of Melbourne Utilities. The charge for this service is included in the tenants' monthly rental fee... ..

Waste and trash disposal  The collection of garbage and trash is provided by the City of Melbourne Utilities and is provided for each mobile home. The charge for this service is currently included in the tenants' total monthly rental fee.
VIII. RENT, RENTAL INCREASES AND OTHER CHARGES
The base rent and other charges applicable to your lot are effective January 1, 1985, as reflected in this section. The "base rent" refers to the regular monthly rent established by the Park Owner from time to time. The base rent is subject to annual rent increases effective each January 1st, after ninety (90) days notice from the Park Owner or Management of such increase.
"Other charges" refers to "special use fees" and "pass through charges".
SPECIAL USE FEES refers to those separately itemized amounts charged in addition to the base rent for those specific items hereinafter set forth. The following special use fees are in effect within the park:
a) Owner reserves the right to charge an Entrance or "Move-in" fee. The present amount charged for this fee in the Park is $1,000.00.
.....
h) An additional charge of $5.00 per month for a Tenant's washing machine due to the extra water usage caused by the washing machine and also sewerage charges.
.....
PASS THROUGH CHARGES, means those amounts other than special use fees, which are itemized and can be charged separately from the base rent and which represents the mobile home owner's share of cost charged to the Park Owner by any State or local government or utility company. These charges will be passed on to the Tenant(s) on a pro rata basis. ("Pro rata basis" means that percentage derived by dividing the number of mobile home spaces leased by a resident by the total number of occupied mobile home spaces in the park.) The pass through charges which may be passed on to the Tenant(s) are as follows:
A. Water charges or increases in same;
B. Sewer charges or increases in same;
.....
D. Waste disposal charges or increases in same;
.....
I. Replacement utility costs charged to the Park Owner by State or local government incurred as the result of the actions of any utility company for any utility or other services not provided or available to park residents on the delivery date that replaces, in whole or in part, any utility or other service that is provided or is available to park residents on the delivery date.
The above-mentioned pass through charges and costs which are billed by either the State or local governmental entities or utility companies may be passed through to the Tenants after providing at least ninety (90) days advanced written notice to all Tenants. The amount of an increase in pass through charges shall be limited to the increased costs or charges billed to the park owner by the State or local governmental agency or utility company plus any maintenance and administrative costs related to same as is permitted by § 723.045, Florida Statutes... ..
*151 On September 2, 1986, all residents of the park were notified that the base rent would increase effective January 1, 1987.
Based on advice and recommendation from the City that water usage in the park was "way above average," Herrick had individual water meters installed during June through August 1987. On June 23, 1987, letters were sent to the residents of the park, advising that beginning October 1, 1987, residents would be billed for actual usage on a pro-rata basis, per pass through charges set forth in the prospectus.[1] The letters further advised that due to the increase in charge for water, sewer, and waste disposal charges, there would not be a rent increase on January 1, 1988. Herrick charged $2.50 per residence for reading meters, and as of October 1, 1987, Herrick assessed park residents for water, sewage, and garbage on an individual basis. This cost was in addition to the base rent, which still included a charge of $12.50 per month representing Herrick's original estimated pro rata charge for utilities. Beginning January 1, 1989, Herrick deducted the $12.50 previously computed for utilities from the base rent, but continued to add on the charges based on the individual meter readings. Herrick stipulated that water, sewage, and garbage charges had not been collected from individual residents as a matter of custom. The rental agreements in the park are oral agreements, for a term of one year, beginning January 1 of each year.
The hearing officer found that the "pass on" charge effected by Herrick was authorized by law, but found the manner in which the charges were passed on in this case was contrary to the law and to the park's prospectus and rules and regulations. The hearing officer concluded:
8. Herrick's charges for water and sewer commencing on October 1, 1987, violate Section 723.031(5)(c), F.S. as they resulted in payment of money for sums previously collected as part of the lot rental amount and were otherwise being collected in the remainder of the lot rental amount; they were not disclosed prior to tenancy, were not passed on as a matter of custom, nor were they "authorized by law."
This conclusion of law was adopted by the Division in its amended final order. The Division ordered Herrick to cease assessing water, sewer, and waste disposal based on individual usage. For those residents who received a prospectus prior to occupancy, assessments for water, sewage, and garbage were directed to be in accordance with the prospectus, that is, on a pro rata basis. For residents who were delivered a prospectus after assuming occupancy in the park, assessments for such services were to be based on the disclosures made known to the resident prior to occupancy in the park.[2] In addition, Herrick was directed to refund all sums collected for water, sewer, and waste disposal based on usage. To effect this refund, the homeowners were to receive a credit for the $12.50 collected in the base rent from October 1, 1987, until January 1, 1989, and Herrick was directed to reimburse each resident all sums collected for water, sewage, and garbage services, over and above the $12.50 collected in the base rent during this period. Since Herrick began deducting the $12.50 from the base rent beginning January 1, 1989, he was not required to credit the $12.50 after that date.
The record reflects that Herrick violated section 723.031(5), Florida Statutes, by increasing lot rental fees twice during 1987. The first increase occurred in January 1987, pursuant to proper ninety-day notice; the second increase occurred in *152 October 1987, when Herrick began charging tenants for water usage on an individual basis, while continuing to collect the $12.50 pro rata monthly fee for water which was included in the base rent. The record also reflects that Herrick violated section 723.031(6), Florida Statutes, by charging tenants for water, sewage, and waste disposal on the basis of individual usage, when this particular manner of collecting for these services had not been disclosed prior to tenancy, and had not been previously collected on the basis of individual usage as a matter of custom. Further, assessment on the basis of individual usage was in violation of the prospectus, which specified that water, sewer, and waste charges, "or increases in same," would be passed on to the tenants on a pro rata basis. In short, the park owner's prospectus and the statute will not permit the park owner's conduct, and we affirm the action taken by the Division on this basis.
Before addressing the arguments raised by the parties, it is important to recognize that the purpose for enacting The Florida Mobile Home Act was to protect mobile homeowners, by equalizing the economic leverage mobile home park owners hold over the tenants. 1 J. Hauser, Florida Residential Landlord-Tenant Manual, Chapter 8 (Supp. 1991). In Stewart v. Green, 300 So.2d 889 (Fla. 1974) and Palm Beach Mobile Homes, Inc. v. Strong, 300 So.2d 881 (Fla. 1974), the supreme court observed that the legislature had finally recognized "that a hybrid type of property relationship exists between the mobile home owner and the park owner and that the relationship is not simply one of landowner and tenant." Stewart, 300 So.2d at 892. Mobile home tenancy usually involves persons who own their residences which are of considerable size, and once set up in a park, the residences are not mobile in the real sense of the word. "Because of the difficulties inherent in moving the home from one settled location to another, ... it is hard to imagine a situation where the park owner and the tenants are in an equal bargaining position on rent increases." Belcher v. Kier, 558 So.2d 1039, 1042 (Fla. 2d DCA), review denied, 570 So.2d 1305 (Fla. 1990). See also Harris v. Martin Regency, Ltd., 576 So.2d 1294, 1297 (Fla. 1991); Lanca Homeowners, Inc. v. Lantana Cascade of Palm Beach, Ltd., 541 So.2d 1121, 1124 (Fla.), cert. denied, 493 U.S. 964, 110 S.Ct. 405, 107 L.Ed.2d 371 (1989); B.J. Pearce v. Doral Mobile Home Villas, Inc., 521 So.2d 282 (Fla. 2d DCA 1988). The current costs of moving a mobile home range from $4,000 to $10,000. See 1 J. Hauser, Landlord-Tenant Manual, at 69.
The delivery of a prospectus to all residents of a mobile home park containing twenty-six or more lots, is one factor in the legislative effort to afford protection to occupants and prospective occupants of a park. The prospectus is a disclosure document. Village Park Mobile Home Assoc. v. State, Dept. of Business Regulation, Div. of Florida Land Sales, Condominiums and Mobile Homes, 506 So.2d 426, 428 (Fla. 1st DCA), review denied, 513 So.2d 1063 (Fla. 1987). It is drafted by the park owner, and must contain information as specified by section 723.012, Florida Statutes, including a description of the manner in which utilities and other services are to be provided, an explanation of the manner in which lot rentals will be increased, a provision for ninety days advance notice of any increase or reduction in service, and disclosure of any rate increase or pass through charges to which the homeowner could be subjected. Village Park v. Dept. of Business Regulation, 506 So.2d at 428. That is, the prospectus delineates the basis for, and the procedure governing, future rent increases. Id., at 429. Unless the park owner fully discloses all proposed fees, charges, and assessments, he waives the right to obtain such in the future. Lemon v. Aspen Emerald Lakes Assoc., Ltd., 446 So.2d 177 (Fla. 5th DCA 1984).
The applicable disclosure provisions are set forth at section 723.011, Florida Statutes (Supp. 1986),[3] which provides in part:

*153 (1)(a) In a mobile home park containing 26 or more lots, the park owner shall file a prospectus with the division. Prior to entering into an enforceable rental agreement for a mobile home lot, the park owner shall deliver to the home owner a prospectus approved by the division... .
(2) The park owner shall furnish a copy of the prospectus or offering circular together with all of the exhibits thereto to each prospective lessee. Delivery shall be made upon execution of the rental agreement or at the time of occupancy, whichever occurs first. However, the park owner is not required to furnish a copy of the prospectus or offering circular if the tenancy is a renewal of a tenancy and the mobile home owner has previously received the prospectus or offering circular.
(3) With regard to a tenancy in existence on the effective date of this chapter, the prospectus or offering circular offered by the mobile home park owner shall contain the same terms and conditions as rental agreements offered to all other mobile home owners residing in the park on the effective date of this act, excepting only rent variations based upon lot location and size, and shall not require any mobile home owner to install any permanent improvements. (Emphasis supplied.)
.....
Section 723.012, Florida Statutes, sets forth the information required to be included in the prospectus or offering circular provided to each prospective lessee. Among other things, the prospectus must include:
(7) A description of all improvements, whether temporary or permanent, which are required to be installed by the mobile home owner as a condition of his occupancy in the park.
(8) The manner in which utility and other services, including, but not limited to, sewage and waste disposal, cable television, water supply, and storm drainage, will be provided, and the person or entity furnishing them. The services and the lot rental amount or user fees charged by the park owner for the services provided by the park owner shall also be disclosed.
(9) An explanation of the manner in which the lot rental amount will be raised, including, but not limited to:
(a) Notification of the mobile home owner at least 90 days in advance of the increase.
(b) Disclosure of any factors which may affect the lot rental amount, including, but not limited to:
1. Water rates.
2. Sewer rates.
3. Waste disposal rates.
4. Maintenance costs, including costs of deferred maintenance.
5. Management costs.
6. Property taxes.
7. Major repairs or improvements.
8. Any other fees, costs, entrance fees, or charges to which the mobile home owner may be subjected.
(c) Disclosure of the manner in which the pass-through charges will be assessed.

.....
(11) The park rules and regulations and an explanation of the manner in which park rules or regulations will be set, changed, or promulgated. (Emphasis supplied.)
The provisions governing lot rental agreements are set forth in section 723.031, Florida Statutes, which provides in part:
(1) No rental agreement shall contain any rule or regulation prohibited by this chapter, nor shall it provide for promulgation of any rule or regulation inconsistent with this chapter or amendment of any rule or regulation inconsistently with this chapter.
(2) Whether or not a tenancy is covered by a valid written rental agreement, the *154 required statutory provisions shall be deemed to be a part of the rental agreement.
(3) The home owner shall have no financial obligation to the park owner as a condition of occupancy in the park, except the lot rental amount. The parties may agree otherwise as to user fees which the home owner chooses to incur. No user fees shall be charged by the park owner to the mobile home owner for any services or amenities which were previously provided by the park owner and included in the lot rental amount unless there is a corresponding decrease in the lot rental amount.
(4) No rental agreement shall be offered by a park owner for a term of less than 1 year, and if there is no written rental agreement, no rental term shall be less than 1 year from the date of initial occupancy; however, the initial term may be less than 1 year in order to permit the park owner to have all rental agreements within the park commence at the same time. Thereafter, all terms shall be for a minimum of 1 year.
(5) The rental agreement shall contain the lot rental amount and services included. An increase in lot rental amount upon expiration of the term of the lot rental agreement shall be in accordance with s. 723.037 or s. 723.059(4), whichever is applicable, provided that, pursuant to s. 723.059(4), the amount of the lot rental increase is disclosed and agreed to by the purchaser, in writing. An increase in lot rental amount shall not be arbitrary or discriminatory between similarly situated tenants in the park. No lot rental amount may be increased during the term of the lot rental agreement, except:

(a) When the manner of the increase is disclosed in a lot rental agreement with a term exceeding 12 months and which provides for such increases not more frequently than annually.

(b) For pass-through charges as defined in s. 723.003(9).
(c) That no charge may be collected that results in payment of money for sums previously collected as part of the lot rental amount. The provisions hereof notwithstanding, the mobile home park owner may pass on, at any time during the term of the lot rental agreement, ad valorem property taxes and utility charges, or increases of either, provided that the ad valorem property taxes and the utility charges are not otherwise being collected in the remainder of the lot rental amount and provided further that the passing on of such ad valorem taxes or utility charges, or increases of either, was disclosed prior to tenancy, was being passed on as a matter of custom between the mobile home park owner and the mobile home owner, or such passing on was authorized by law. Such ad valorem taxes and utility charges shall be a part of the lot rental amount as defined by this chapter.
(6) Except for pass-through charges, as defined in this chapter, failure on the part of the mobile home park owner or developer to disclose fully all fees, charges or assessments prior to tenancy, unless it can be shown that such fees, charges or assessments have been collected as a matter of custom between the mobile home park owner and the mobile home owner, shall prevent the park owner or operator from collecting said fees, charges, or assessments; and refusal by the mobile home owner to pay any such fee, charge, or assessment shall not be used by the park owner or developer as a cause for eviction in any court of law.
.....
(9) No rental agreement shall provide for the eviction of a mobile home owner on a ground other than one contained in s. 723.061.
(10) The rules and regulations and the prospectus shall be deemed to be incorporated into the rental agreement. (Emphasis supplied.)
Section 723.037, Florida Statutes, sets forth the prescribed procedure for effecting lot rental increases, reduction in services or utilities, changes in rules and regulations, and mediation and arbitration provisions, *155 in event of a dispute. The notice provision upon which Herrick relies to validate the action giving rise to this appeal states:
(1) A park owner shall give written notice to each affected mobile home owner and the board of directors of the homeowners' association, if one has been formed, at least 90 days prior to any increase in lot rental amount or reduction in services or utilities provided by the park owner or change in rules and regulations... . Pass-through charges must be separately listed as to the charge being levied. Notices of increase in the lot rental amount due to a pass-through charge shall state the additional payment and starting and ending dates of the pass-through charges... .
Pursuant to subsection (1), the park owner must provide written notice to each affected mobile home owner at least ninety days prior to any proposed increase in rent or reduction in services. Subsection (3) provides for a meeting between representatives of the park residents and the park owner, to discuss the reasons for the proposed changes. Subsection (4) provides for mediation to resolve disputes. If the parties ultimately agree, subsection (5) provides for arbitration rather than mediation.
Section 723.003, Florida Statutes, provides the meaning to be accorded words and terms used in Chapter 723. The term "pass-through charge" is defined thusly:
(9) The term "pass-through charge" means the mobile home owner's proportionate share of the necessary and actual direct costs and impact or hookup fees for a governmentally mandated capital improvement, which may include the necessary and actual direct costs and impact or hookup fees incurred for capital improvements required for public or private regulated utilities.
Under the provisions of section 723.011(2), a prospective tenant is afforded the safeguards inherent in the prospectus "upon execution of a rental agreement or at the time of occupancy, whichever occurs first." Tenants already in residence when the act went into effect are to be furnished a prospectus setting forth the same terms and conditions applicable to all other mobile home owners residing in the park on the effective date of the act. § 723.011(3), Fla. Stat. (Supp. 1986); Village Park v. Dept. of Business Regulation, 506 So.2d at 729.
Herrick contends: (1) the prospectus delivered in January 1986 governs rent increases as to all tenants, including those tenants in occupancy prior to delivery of the prospectus; (2) tenancy in the park is on an annual, rather than a continuous basis, so the park owner can collect fee increases from tenants in occupancy in the park prior to delivery of the prospectus; (3) section 723.037, Florida Statutes, permits the park owner to amend the prospectus to reduce services and begin charging "pass on" charges for utilities upon 90-day notice. Herrick further asserts that his conduct is not governed by the amendments effected in 1986, but by the statute in effect when he delivered the prospectus, because retroactive application of the amendments as to him would unconstitutionally impair the obligations of contracts.
The Division contends: (1) the tenants in residence prior to delivery of the prospectus are entitled to rely upon the disclosures made prior to their occupancy, and while all park tenants must receive a prospectus, the terms and conditions are different for those persons in occupancy in parks prior to the June 4, 1984, effective date of Chapter 723; (2) tenancy in a mobile home park is continuous from the date a lot rental agreement is entered into or the home owner assumes occupancy, until the homeowner terminates the agreement or is evicted pursuant to section 723.061; (3) section 723.037 is a procedural notice provision which must be read in pari materia with all of Chapter 723, and does not authorize the park owner to amend the prospectus in a manner inconsistent with Chapter 723 upon ninety day notice, for to do so would frustrate the disclosure purpose of the prospectus; and (4) the Division was required to apply the law in existence when Herrick improperly assessed the homeowners. The Division further maintains that certain provisions of Herrick's prospectus not in compliance *156 with section 723.011(3) are void and are not constitutionally protected.
We address these contentions seriatim. First, we conclude that Chapter 723 evinces legislative intent that the prospectus delivered by the park owner to prospective lessees, and to all mobile home owners in occupancy on the effective date of Chapter 723, shall govern the terms and conditions of the tenancy as to both pre-existing occupancy and occupancy which commences with delivery of the prospectus. As to pre-existing tenancies, section 723.011(3) provides that "the prospectus or offering circular offered by the mobile home park owner shall contain the same terms and conditions as rental agreements offered to all other mobile home owners residing in the park on the effective date of this act, excepting only rent variations as to lot location and size, and shall not require any mobile home owner to install any permanent improvements." We construe this provision to mean that the prospectus prepared by the park owner must incorporate the disclosures made to mobile home owners in occupancy prior to the June 4, 1984, effective date of Chapter 723, and the park owner is precluded from including anything in the prospectus which would require these prior tenants to install permanent improvements. Similarly, the terms and conditions of the prospectus do not govern pre-existing tenancies until renewal of the tenancy.
Second, tenancy in Tan Tara Mobile Home Park is on an annual basis, and fee increases may be collected from all tenants, including those in occupancy prior to delivery of the prospectus, upon renewal of the tenancy, in accordance with the terms and conditions of the prospectus and the provisions of Chapter 723. We recognize that the Division's theory of a continuous tenancy pertains to the continuous and binding nature of disclosures made by a park owner to a park tenant, and to the unique nature of this hybrid tenancy. Nevertheless, effect can be given to legislative intent to protect mobile home owners from arbitrary, unreasonable fee increases without fashioning a definition of "tenancy" in the context of mobile home park lot tenancies that the legislature has not seen fit to provide. The disclosures required to be set forth in the prospectus are one aspect of the statutory protections afforded the mobile home owner. By the same token, the statute recognizes a park owner's need to adjust rental charges and charges for services, and includes a procedure whereby such adjustments can be effected, after proper notice to the affected tenants, and affording the tenants an opportunity to be heard. See § 723.037, Florida Statutes (1987).[4]
Third, we conclude that section 723.037 does not permit the park owner to amend the prospectus to reduce services, and to "pass on" charges for utilities in a manner different from that disclosed in the prospectus upon nothing more than a ninety day notice. Rather, section 723.037 is a procedural notice provision which must be read in pari materia with the other provisions of chapter 723. Pursuant to section 723.037, Herrick was authorized to assess a rent increase and increase in charges assessed for utilities once annually, upon ninety day written notice, provided the increase in utility charges was assessed pro rata in accordance with the prospectus and with section 723.031(5), Florida Statutes. Herrick concedes that he was not entitled to include the estimated pro rata utility charge in the base rent, and at the same time assess charges for utilities on an individual basis. This conduct constituted a clear violation of the park prospectus, which specifies that increases in water, sewer, and waste disposal charges "will be passed on to the Tenant(s) on a pro rata basis," and of sections 723.012(8) and 723.031(5)(c) and (6), Florida Statutes. In a similar vein, we reject Herrick's contention that although he admittedly erred in assessing tenants twice for the same services, because he forbore a formal rent increase *157 in January 1988, the spirit of the statute was not offended. As a practical matter, Herrick's conduct effected a hidden rent increase.
Moreover, we reject Herrick's assertion that application of the 1986 amended version of Chapter 723, in effect at the time the charges at issue were assessed, would impair his constitutionally protected contract rights.[5]See Art. I, § 10, Fla. Const. An impairment of contract rights claim must be considered in the context of the end sought to be attained by the legislation at issue and whether the means devised to achieve that end are reasonable and appropriate. Mahood v. Bessemer Prop., Inc., 154 Fla. 710, 18 So.2d 775 (1944). In Mahood, the court explained:
The remedial law in force at the time the contract is made enters into and becomes a part thereof, but the parties to the contract have no vested right under the contract clause of the Federal Constitution, in the particular remedy or modes of procedures then existing. It may be assumed that the parties made their contract with knowledge of the power of the State to change the remedy or method of enforcing the contract, which may be done by a State without impairing contract obligations. (citation omitted.) A State may by legislative enactment modify existing remedies and substitute others without impairing the obligation of contracts, provided a sufficient remedy be left or another sufficient remedy be provided.
18 So.2d at 779-780.
Former Chapter 83, now Chapter 723, was enacted to provide mobile home owners with security in their dealings with mobile home park owners. Stewart v. Green, 300 So.2d 889, 891 (Fla. 1974); Palm Beach Mobile Homes, Inc. v. Strong, 300 So.2d 881, 886-887 (Fla. 1974). The 1986 amendments to Chapter 723 were, for the most part, clarifying in nature. In no sense, did these amendments abrogate a right available to Herrick in the 1985 statutory provisions. For example, section 723.012(8), Florida Statutes (1985), requires the park owner to disclose "[t]he manner in which utility and other services, including, but not limited to, sewage and waste disposal, television, water supply, and storm drainage, will be provided and the person or entity furnishing them." The park prospectus at issue in this case expressly provided that increases in water, sewage, and waste disposal would be passed on to park tenants on a pro rata basis. Thus, the manner in which Herrick passed on these increases contravened both the prospectus and the statute, whether one looks to the 1985 version or the 1986 amended version of Chapter 723.
We appreciate the difficulty experienced by the Division in its efforts to give effect to legislative intent to protect the unique tenancy of the mobile home owner without benefit of a statutory definition of "tenancy." To avoid possible abuse in this area, perhaps the time is ripe for provision of a legislative definition of this unique hybrid tenancy recognized seventeen years ago by the Florida Supreme Court in Stewart v. Green.
We conclude that the violations specified, and the remedies imposed by the Division in its amended final order, are appropriate to the circumstances of this case, and are authorized by the provisions of section 723.006, Florida Statutes (Supp. 1986). Moreover, these remedies are consistent with, and give effect to, legislative intent that residents of mobile home parks shall not be subject to any charge which is not set forth in the mobile home park prospectus, and has not been disclosed prior to tenancy.
Accordingly, the amended final order is affirmed in all respects save the provisions of paragraph three of the decretal portion of the order. This provision is modified to *158 reflect that homeowners who were delivered a prospectus after assuming occupancy in the park, shall be assessed for water, sewer, and waste disposal based on the disclosures contained in the prospectus.
BOOTH and ALLEN, JJ., concur.
NOTES
[1] Although the letter advised that residents would be billed for actual usage on a "pro rata basis," Herrick agrees that beginning in October 1987, residents were billed for individual usage.
[2] The park rules and regulations in effect prior to the January 1986 delivery of the prospectus did not provide for water or other utility assessments based on individual usage. Rather, such charges had been assessed on a pro rata basis, even as to long-term tenants who had received no disclosures prior to occupancy. Therefore, the Division's error in separating park tenants into two classes has no bearing on the propriety of the remedies ordered, since the disclosures made known to tenants prior to occupancy were the same disclosures set forth in the prospectus.
[3] The violations at issue in this case began in October 1987. Therefore, all statutory references pertain to the 1986 amended version of Chapter 723, effective July 1, 1986. Ch. 86-162, § 16; Laws of Fla.
[4] At oral argument of this cause, counsel for the Division indicated that the Division is no longer pursuing its theory of continuous tenancy.
[5] Herrick recognizes that pursuant to the rules promulgated by the Division, a park owner is in no sense precluded from amending a prospectus. However, such amendment cannot be effected by the expedient of a ninety day notice. To permit a park owner to amend a prospectus in this fashion would abrogate the park tenants' legislatively prescribed rights and protections, and would be invalid as a unilateral alteration to a bilateral agreement.