VILLANTI, Judge.
 

 Defendants/appellants Rocky Creek Retirement Properties, Inc., a/k/a Rocky Creek Retirement Properties, Inc., d/b/a Rocky Creek Retirement Properties, Inc., d/b/a Rocky Creek Retirement Village, Ira Sochet, William M. Lupo, Thomas Wingo, and William Nazario (collectively “Rocky Creek”) appeal the trial court’s nonfinal order denying their motion to stay litigation and compel arbitration in an action brought against Rocky Creek by the Estate of Virginia B. Fox (“the Estate”). Because no evidence was presented to show that the arbitration agreement was unenforceable, we reverse and remand for referral of this case to arbitration.
 

 Virginia Fox became a resident of Rocky Creek Retirement Village in June 1997. None of the admissions paperwork that she signed at that time contained an arbitration agreement. However in March 2006 Rocky Creek decided, apparently at the behest of its new insurance company, to request that its residents sign an arbitration agreement. At a meeting in the dining hall, Rocky Creek Executive Director William Lupo gave each resident a copy of an amendment to the residency agreement that would require each resident to arbitrate claims against Rocky Creek (“the Agreement”). At that meeting, Lupo told the residents “that the arbitration agreement would — would help us and them from the standpoint of keeping costs down if there was a problem, and that they weren’t giving up any of their rights if they — you know, if they signed it....” Lupo further explained that in the event of a legal problem, the residents “would be able to still sue us if they — if they wanted to do that and bring us into a court.... I explained to them that they wouldn’t have a jury trial, however, they could still bring us into a court....” Lupo then encouraged the residents to read the Agreement and discuss it with their families and attorneys if they wished. He also specifically told the residents that they were not required to sign the Agreement and that nothing about their residency would change if they chose not to sign the Agreement. On March 16, 2006, Ms. Fox signed the Agreement. Ms. Fox’s daughter, who held a durable power of attorney for Ms. Fox, also signed the Agreement.
 

 Ms. Fox died in December 2006. In November 2007, the Estate sued Rocky Creek for alleged violations of Ms. Fox’s rights under section 429.28, Florida Statutes (2006). In response, Rocky Creek filed a motion to compel arbitration pursuant to the terms of the Agreement. Following a hearing on the matter, the trial court denied Rocky Creek’s motion to compel arbitration, finding that Rocky Creek had failed to establish that Ms. Fox understood the rights she was giving up when she signed the Agreement, and particularly that she did not understand that she
 
 *1108
 
 was giving up her right to a jury trial. Rocky Creek now seeks review of the trial court’s ruling.
 

 As an initial matter, we note that this case does not deal with the issue of uncon-scionability. Both in the trial court below and in this appeal, the Estate has specifically stated that it is not alleging that the Agreement was either procedurally or substantively unconscionable. Instead, the Estate argues only that no valid contract to arbitrate exists despite the undisputed fact that Ms. Fox signed the Agreement. Thus, the question before this court is whether the signed Agreement constitutes a valid and enforceable contract. On the facts presented here, we hold that it does.
 

 As a general proposition, “[wjhere one contracting party signs the contract, and the other party accepts and signs the contract, a binding contract results.”
 
 D.L. Peoples Group, Inc. v. Hawley,
 
 804 So.2d 561, 563 (Fla. 1st DCA 2002) (citing
 
 Skinner v. Haugseth,
 
 426 So.2d 1127, 1129 (Fla. 2d DCA 1983));
 
 see also Mandell v. Fortenberry,
 
 290 So.2d 3, 7 (Fla.1974) (“There is a presumption that the parties signing legal documents are competent, that they mean what they say, and that they should be bound by their covenants.”);
 
 Dodge of Winter Park, Inc. v. Morley,
 
 756 So.2d 1085, 1085-86 (Fla. 5th DCA 2000) (“Generally, it is enough that the party against whom the contract is sought to be enforced signs it.”). Thus, “[a] party normally is bound by a contract that the party signs unless the party can demonstrate that he or she was prevented from reading it or induced by the other party to refrain from reading it.”
 
 Consol. Res. Healthcare Fund I, Ltd. v. Fenelus,
 
 853 So.2d 500, 504 (Fla. 4th DCA 2003);
 
 see also Allied Van Lines, Inc. v. Bratton,
 
 351 So.2d 344, 347-48 (Fla.1977) (“It has long been held in Florida that one is bound by his contract. Unless one can show facts and circumstances to demonstrate that he was prevented from reading the contract, or that he was induced by statements of the other party to refrain from reading the contract, it is binding.”);
 
 Estate of Etting ex rel. Etting v. Regents Park at Aventura, Inc.,
 
 891 So.2d 558, 558 (Fla. 3d DCA 2004) (holding that the fact that the decedent was legally blind when she signed the arbitration agreement did not render the agreement invalid in the absence of evidence that she was coerced into signing it or prevented from knowing its contents). This is true whether a party is physically unable to read the agreement,
 
 see Estate of Etting,
 
 891 So.2d at 558, or simply chooses not to read the agreement,
 
 see Fenelus,
 
 853 So.2d at 504.
 

 Here, the Estate does not dispute that Ms. Fox signed the Agreement, nor does it contend that she was incapacitated such that she was legally incapable of signing the Agreement.
 
 [1]
 
 Further, the Estate does not argue, nor could it argue based on the evidence before the trial court, that Ms. Fox was coerced into signing the Agreement or prevented from knowing its contents. Thus, the Agreement is a facially valid contract that is binding on the Estate and that should have been enforced by the trial court.
 

 In this appeal, as in the trial court, the Estate argues that even if Ms. Fox had read the Agreement, she would not have understood that she was waiving her right to a jury trial. Thus, according to the Estate, the Agreement is not valid and enforceable despite Ms. Fox’s signature. However, Ms. Fox’s alleged inability to understand the Agreement does not viti
 
 *1109
 
 ate her assent to that Agreement in the absence of some evidence that she was prevented from knowing its contents. Florida law has long held that a party to a contract is “conclusively presumed to know and understand the contents, terms, and conditions of the contract.”
 
 Stonebraker v. Reliance Life Ins. Co. of Pittsburgh,
 
 123 Fla. 244, 166 So. 583, 584 (1936). “A party has a duty to learn and know the contents of an agreement before signing it,” and “[a]ny inquiries ... concerning the ramifications of [the contract] should have been made before signing.”
 
 Onderko v. Advanced Auto Ins., Inc.,
 
 477 So.2d 1026, 1028 (Fla. 2d DCA 1985);
 
 see also Berry v. Berry,
 
 992 So.2d 898, 900 (Fla. 2d DCA 2008). “[IJcoracle of the contents of a document does not ordinarily affect the liability of one who signs it.”
 
 Keller v. Reed, 603
 
 So.2d 717, 720 (Fla. 2d DCA 1992).
 

 Here, the only evidence presented was that Ms. Fox was given the Agreement with an unlimited period of time in which to read it and discuss it with anyone she wished. Her decision, and that of her daughter as attorney-in-fact, not to discuss the ramifications of the Agreement with an attorney or to obtain a complete understanding of the Agreement before signing it does not render her assent to that Agreement invalid. Once Ms. Fox signed the Agreement, she was presumed to know, understand, and agree to its contents.
 

 The Estate relies upon numerous cases standing for the proposition that a party that did not actually agree to arbitrate cannot be compelled to arbitrate. Thus, it contends that Rocky Creek must present evidence to show that Ms. Fox actually agreed to waive her right to a jury trial. However, the cases cited by the Estate are inapposite to the issue here. All of the cases cited by the Estate involve entities who either did not sign the arbitration agreement at all,
 
 see, e.g., Regency Island Dunes, Inc. v. Foley & Assocs. Constr. Co.,
 
 697 So.2d 217 (Fla. 4th DCA 1997) (holding that parent company could not be bound by arbitration agreement signed solely by subsidiary);
 
 Karlen v. Gulf & W. Indus., Inc.,
 
 336 So.2d 461 (Fla. 3d DCA 1976) (holding that successor in interest could not be bound by arbitration agreement signed by predecessor in interest), or who contested the validity of their purported signature,
 
 see, e.g., Schoendorf v. Toyota of Orlando,
 
 No. 6:08-cv-767-Orl-19DAB, 2009 WL 1075991 (M.D.Fla. Apr. 21, 2009) (holding plaintiff was not bound by arbitration agreement when she contended that her signature was forged and the defendant presented no evidence to the contrary); She
 
 arson, Lehman, Hutton, Inc. v. Lifshutz,
 
 595 So.2d 996 (Fla. 4th DCA 1992) (same).
 

 Here, unlike in those cases, there is no dispute that Ms. Fox signed the Agreement, as did her daughter. In the absence of a dispute concerning the validity of Ms. Fox’s signature, Rocky Creek was not required to present other evidence of Ms. Fox’s agreement thereto.
 

 The Estate also argues that the Agreement is invalid due to a lack of consideration. However, this court has previously held that one party’s agreement to submit a dispute to arbitration is sufficient consideration to support the other party’s agreement to do the same because of the mutuality of obligations that the agreement creates.
 
 Kinko’s, Inc. v. Payne,
 
 901 So.2d 354, 355 (Fla. 2d DCA 2005). Thus, this argument has no merit.
 

 Finally, the Estate argues that the Agreement should be found invalid because Rocky Creek’s representative misrepresented the terms of the Agreement when he discussed it with the residents at the meetings in the dining hall. However,
 
 *1110
 
 the Estate failed to present evidence sufficient to establish a negligent misrepresentation defense to the Agreement.
 

 To avoid a contract based on negligent misrepresentation, the party seeking to avoid the contract must establish the following elements:
 

 (1) misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the representation without knowledge as to its truth or falsity, or must make the representation under circumstances in which he ought to have known of its falsity; (3) the representor must intend that the representation induce another to act on it; (4) injury must result to the party acting in justifiable reliance on the misrepresentation.
 

 Atl. Nat’l Bank of Fla. v. Vest,
 
 480 So.2d 1328, 1331-32 (Fla. 2d DCA 1985);
 
 see also Baggett v. Electricians Local 915 Credit Union,
 
 620 So.2d 784, 786 (Fla. 2d DCA 1993).
 

 The Estate presented some evidence to show that Rocky Creek’s representative, Lupo, made a misrepresentation of material fact concerning whether the Agreement allowed a resident to “sue” Rocky Creek in a “court of law.” The Estate also presented some evidence that Lupo made these statements without knowledge as to their truth or falsity. However, the Estate presented no evidence that Lupo intended for the residents, including Ms. Fox, to rely on that representation when signing the Agreement. Instead, the only evidence presented shows that Lupo encouraged residents to read the Agreement and discuss it with their families and attorneys before deciding whether to sign it. In addition, Lupo told the residents that they did not have to sign the Agreement to remain a resident. Under these circumstances, the overall evidence presented was insufficient, as a matter of law, to establish that Lupo intended for Ms. Fox to rely on his representations when deciding whether to sign the Agreement. In the absence of evidence of this intent, the Estate cannot avoid the terms of the Agreement that was signed by Ms. Fox.
 

 Thus, Rocky Creek presented the trial court with a facially valid agreement to arbitrate signed by both Ms. Fox and her daughter. The Estate did not present sufficient evidence to prove any defense to the enforcement of this facially valid agreement, and the trial court should have enforced it. Accordingly, we reverse and remand for referral of this ease to arbitration.
 

 Reversed and remanded for further proceedings.
 

 DAVIS and MORRIS, JJ., Concur.
 

 [1]
 

 . We note that even if such an argument had been made, Ms. Fox’s daughter, who held a facially valid durable power of attorney for her mother, also signed the Agreement.