BLACK, Judge.
Tara Woods SPE, LLC, appeals the final judgment and supplemental final judgment entered in favor of Louella Cashin. Collectively, the judgments interpret provisions of Florida’s Mobile Home Act, chapter 723, Florida Statutes (2007), and permit Ms. Cashin to rescind her lease contract. Presented with an issue of first impression, we must determine whether Tara Woods SPE, LLC (Tara Woods), a mobile home park owner, complied with the disclosure requirements of the Mobile Home Act (Act) as it relates to resale purchasers. Ms. Cashin persuaded the circuit court that the park owner did not comply with the Act; Tara Woods contends that the circuit court erroneously concluded that the park owner did not do enough to comply with the Act and further contends that Ms. Cashin waived certain rights. As we will explain in detail, we agree with Tara Woods’ arguments and therefore reverse the judgments on appeal.
I. Background
In August 2007 Ms. Cashin purchased a mobile home in Tara Woods Mobile Home Park. Tara Woods owns the park, which is regulated by the Act. Ms. Cashin’s mobile home was a resale; she purchased the home from the trustee of a deceased resident’s trust (Seller).
A. Documents
On August 8, 2007, Ms. Cashin executed a Rental Assumption Agreement acknowledging and agreeing to assume the remaining term of the rental agreement between Tara Woods and the Seller. In addition, she executed a Rental Agreement to be effective for the period assumed— September 1, 2007 through December 31, 2007. The Rental Agreement included a rent increase provision identical to the rent increase provision in the Seller’s original rental agreement, to wit: “The LANDLORD may raise the amount of base rent and special use fees and other charges annually effective the 1st day of January,_Increases in the base rent and other fees and charges will be determined in the manner disclosed in the Prospectus.”
On the same day, Ms. Cashin signed an acknowledgment stating that she received a copy of Tara Woods’ Prospectus and a Lifetime Lease. The Prospectus provided to Ms. Cashin was approved by the Department of Business and Professional Regulation (Department) in 1994, pursuant to the Act. See §§ 723.006(8), .011(1); Vill. Park Mobile Home Ass’n., Inc. v. Fla. Dep’t. of Bus. Reg., 506 So.2d 426, 426 (Fla. 1st DCA 1987). The Lifetime Lease, as an attachment to the Prospectus, had been approved by the Department on March 28, 2006. See §§ 723.011(2), .012(14)(d).
The first page of the Prospectus contains four paragraphs, each of which is typed in capital letters and required under the Act. See § 723.012(l)(b). As relevant to this appeal, paragraphs one, two, and four provide:
THIS PROSPECTUS CONTAINS VERY IMPORTANT INFORMATION REGARDING YOUR LEGAL RIGHTS AND YOUR FINANCIAL OBLIGATIONS IN LEASING A MOBILE HOME LOT. MAKE SURE THAT YOU READ THE ENTIRE DOCU *495 MENT AND SEEK LEGAL ADVICE IF YOU HAVE ANY QUESTIONS REGARDING THE INFORMATION SET FORTH IN THIS DOCUMENT. THE STATEMENTS CONTAINED HEREIN ARE ONLY SUMMARY IN NATURE. A PROSPECTIVE LESSEE SHOULD REFER TO ALL REFERENCES, ALL EXHIBITS HERETO, THE CONTRACT DOCUMENTS, AND ALL SALES MATERIALS.
[[Image here]]
UPON DELIVERY OF THE PROSPECTUS TO A PROSPECTIVE LESSEE, THE RENTAL AGREEMENT IS VOIDABLE BY THE LESSEE FOR A PERIOD OF FIFTEEN (15) DAYS.
Section VIII, paragraph D of the Prospectus, under the heading “Increases in Lot Rental Amount,” addresses factors affecting rent increases:
Factors which may affect the level of increases in the lot rental amount or user fees are as follows:
Consumer Price Index (CPI): [Tara Woods] will consider increases in the level of CPI for the twelve-month (12-mo.) period immediately preceding the notice of increase. Rent and other charges may be increased by a percentage equal to the increase in the level of CPI but such increase will not exceed ten percent (10%) of the level of rent or other charges in the year prior to the effective date of the increase.
Paragraph E of the Prospectus, under the same section and heading, addresses “Additional Considerations” and provides, in relevant part:
Tenants assuming the remaining portion of a rental agreement as prescribed by § 723.059(3), F.S., are hereby notified that upon the expiration of the assumed rental agreement, the Park Owner expressly reserves the right to increase lot rental amount in an amount deemed appropriate by the Park Owner with such increase being imposed in the manner disclosed in the Prospectus delivered to the initial recipient. The increase must be disclosed and agreed to by the purchaser in writing prior to occupancy.
Also on August 8, 2007, Ms. Cashin signed an acknowledgement stating that Tara Woods provided her with an approved Prospectus and that she had not been supplied with the original prospectus delivered to the Seller. That document reads:
The owner of the home I purchased on Lot 143 did not supply me (we) or the Sales Office with the original Prospectus which was delivered to the previous owner(s), per the terms specified in Chapter 723, Florida Statutes, Department of Business Regulation, Division of Florida Land Sales, Condominiums and Mobile Homes.
Tara Woods Community Management furnished me (us) with a current approved Prospectus, which is now being delivered to new residents who purchase new homes. I(we) were informed that it may or may not be the same form as the original Prospectus delivered to the previous owner(s). I(we) the buyer(s) Louella Cashin accept the current Prospectus given to me (us) at the time of the signing of the Lease Agreement to be used as a guide for information purposes.
The final document signed by Ms. Cash-in is her lot rental agreement (Lifetime Lease). Although the date Ms. Cashin signed the Lifetime Lease is unclear — two executed Lifetime Leases were introduced into evidence below — it is clear Ms. Cashin signed a Lifetime Lease.[1] Section C, *496 paragraph 3(C), of the Lifetime Lease addresses factors affecting increases in rent and reads:
Effective the first day of every calendar year the base rent shall be adjusted by the percentage increase in the CPI; however, if the percentage increase in the CPI is less than three percent for any year, the base rent shall be increased by three percent. Alternatively, at the sole discretion of Community Owner, effective the first day of each calendar year, the base rent shall be adjusted to the market rent, but in no year by more than the percentage increase in the CPI plus two percent.
On the last page of the Lifetime Lease, section V, Homeowner Acknowledgement of Understanding, provides: “Homeowner hereby acknowledges that [s]he has read the foregoing Lot Rental Agreement and that prior to executing this Lot Rental Agreement [s]he has had a reasonable opportunity to read and review it....” Finally, immediately preceding the signature lines on the last page of the lease, and typed in bolded, all capital letters appears the following disclosure:
YOU DO NOT HAVE TO ACCEPT THIS RENTAL AGREEMENT.
THIS RENTAL AGREEMENT CONTAINS PROVISIONS WHICH ARE DIFFERENT FROM THE PROSPECTUS DISCLOSURE. THESE DIFFERENCES MAY INCLUDE FEES AND FACTORS WHICH MAY AFFECT THE LOT RENTAL AMOUNT OF OTHER PROVISIONS.
THIS RENTAL AGREEMENT APPLIES ONLY TO THOSE HOMEOWNERS WHO CONSENT TO IT.
B. Lawsuit
On June 24, 2010, almost three years after executing her Lifetime Lease, and after two annual rent increases, Ms. Cash-in filed a two-count complaint against Tara Woods. In count I, Ms. Cashin sought declaratory relief, asking the court to declare the Prospectus the “supreme governing document” such that any provision in Ms. Cashin’s Lifetime Lease which conflicted with the Prospectus was unenforceable. In count II, she claimed damages based on the difference between the rent she paid under the Lifetime Lease and what she would have been obligated to pay under a lease identical to the Seller’s.
Tara Woods answered the complaint and filed affirmative defenses including (1) that Ms. Cashin accepted the Rental Assumption Agreement, Rental Agreement, and Lifetime Lease without question, protest, or dispute; (2) that Ms. Cashin executed an acknowledgment stating that she had not received the Seller’s prospectus and had accepted the current Prospectus; (3) that Ms. Cashin voluntarily agreed to the Lifetime Lease which includes conspicuous language indicating that it was optional; and (4) that Ms. Cashin waived any claim asserting an entitlement to a different rental agreement by her voluntary execution of the Lifetime Lease and the thirty-four-month period in which it had governed the parties’ relationship.
C. Judgments
Following an unsuccessful mediation, the matter went to nonjury trial on May 27, 2011. On January 30, 2012, the court issued its final judgment, concluding in pertinent part:
Assuming ... a prospectus can be amended by attaching a rental agree *497 ment as an exhibit with provisions which conflict with those in the prospectus, as was the situation in this case, the prospectus, as amended, the disclosures made, and the manner in which it is presented to prospective purchasers of existing homes, must, at a minimum, in order to comply with the full and fair disclosure requirements set forth in Chapter 723, Florida Statutes, clearly inform [Ms. Cashin] of her rights under Fla. Stat. 723.059 and choice to enter into a lot rental agreement on the terms and conditions consistent with her Seller’s prospectus. On the facts of this case, [Ms. Cashin] was not given that disclosure and choice. Here, [Ms. Cash-in] was not even provided with a copy of the optional lease she had the right to elect to enter into and informed of the amount of the base rent, if different, she would have to pay under that option. [Ms. Cashin] did not voluntarily consent to the Lifetime Lease and waive her rights under Florida Statute 723.59(3) & (4). Instead, the Lifetime Lease was simply imposed on [Ms. Cashin] by [Tara Woods] by presenting her with only with [sic] that lease, with the confusing and conflicting language used in the documents prepared by [Tara Woods], and presented to [Ms. Cashin], without giving her any meaningful understandable choice. In order to have a valid waiver, there must be a voluntary and intentional relinquishment of a known right.
[[Image here]]
ORDERED AND ADJUDGED, [Ms. Cashin] is entitled to the benefits provided by Florida Statute 723.59(3) & (4), to rely on the terms and conditions of her Seller’s prospectus, and to have the increase in her annual rent, after expiration of the assumed rental agreement of her Seller, imposed in a manner consistent with the initial prospectus given to her Seller, and if she chooses, to a lot rental agreement in accordance with those terms, restorative to the date of her purchase, together with damages equal to the amounts paid by [Ms. Cash-in] in excess of the amounts so determined, and prejudgment interest thereon.
Thereafter, the court entered its supplemental final judgment reflecting that Ms. Cashin had elected to rescind her Lifetime Lease pursuant to the final judgment, which “provided for an election by [Ms. Cashin] to rescind her [Lifetime Lease] and, if she elected to rescind, for damages equal to the amounts paid ... in excess of the amount payable based on the terms of her seller’s prospectus and lease.”
II. Discussion
In a declaratory judgment action, this court defers to the circuit court’s findings of fact, provided they are supported by competent, substantial evidence. See Fortune v. Hutchinson, 20 So.3d 476, 477 (Fla. 2d DCA 2009). However, the circuit court’s conclusions of law, when based on its interpretation of statutes and written agreements and contracts, are reviewed de novo. See J.S.U.B., Inc. v. U.S. Fire Ins. Co., 906 So.2d 303, 306 (Fla. 2d DCA 2005).
A. Relief requested
Although not raised by Tara Woods on appeal, we must note that the circuit court’s final and supplemental final judgments grant relief not requested by Ms. Cashin — the right to rescind her Lifetime Lease. Nothing in our record indicates that a motion for supplemental relief was filed. See § 86.061, Fla. Stat. (2011). Further, to the extent Ms. Cashin’s declaratory action seeks, in part, a determination that she had a right to rely on the rent-increase provision in the Prospectus she *498 was given, the court so determined. However, the specific prayer of the declaratory action was effectually denied. The court did not find “that the Prospectus is the supreme governing document and that anything contained in [Ms. Cashin’s] lease that is contrary to the Prospectus is unenforceable” or “that the minimum increase of 3% contained in the [Lifetime Lease] is unenforceable because it conflicts with [Ms. Cashin’s] Prospectus.”
Nonetheless, because Ms. Cashin was “entitled to a judicial determination of the rights at issue,” see Meadows Cmty. Ass’n., Inc. v. Russell-Tutty, 928 So.2d 1276, 1279 (Fla. 2d DCA 2006), the court determined that Tara Woods had specific obligations pursuant to section 728.059 of the Act, which were not met. The court further found that the manner in which rent was increased under the Lifetime Lease conflicted with the manner in which rent was increased under the Prospectus. Based on these determinations, the court granted Ms. Cashin the right to rescind her Lifetime Lease.
B. Issues raised on appeal
1. Statutory interpretation
The first three points on appeal address the circuit court’s interpretation of the Act as reflected in the final judgment. - It is upon these issues that the case presented is one of first impression. Because of this, we have endeavored to discuss each relevant provision of the documents signed by Ms. Cashin, as well as the relevant statutes. In doing so, it became apparent that the circuit court misinterpreted the Act such that the court elevated the Prospectus beyond the status intended by the legislature, affording it greater weight than the Lifetime Lease.
The Prospectus, whether the Seller’s or Ms. Cashin’s, “is fundamentally a disclosure document.” Vill. Park, 506 So.2d at 428. This is made abundantly clear by the language of the Act. Section 723.011, titled “Disclosure prior to rental of a mobile home lot; prospectus, filing, approval,” states that “[t]he prospectus ... together with its exhibits is a disclosure document intended to afford protection to homeowners and prospective homeowners in the mobile home park. The purpose of the document is to disclose the representations of the mobile home park owner concerning the operations of the mobile home park.” § 723.011(3); see Sun Coast Int'l., Inc. v. Dep’t. of Bus. Reg., 596 So.2d 1118, 1120 n. 1 (Fla. 1st DCA 1992) (“The purpose of the prospectus is to disclose to the tenants certain information regarding the operation of the mobile home park .... ”); see also Vill. Park, 506 So.2d at 428 (listing the statutory disclosure requirements). Section 723.012, detailing the requirements of the prospectus, mandates that the prospectus include, “in conspicuous type,” the admonition that “[t]he statements contained herein are only summary in nature. A prospective lessee should refer to all references, all exhibits hereto, the contract documents, and sales materials.” § 723.012(1)(b)(2) (emphases added). In addition, a “prospectus must be delivered prior to the creation of an enforceable rental agreement.” Fed’n. of Mobile Home Owners of Fla., Inc. v. Fla. Manufactured Hous. Ass’n., Inc., 683 So.2d 586, 588 (Fla. 1st DCA 1996). Quite clearly the legislature did not intend the prospectus to create rights or duties not already imposed by the Act, nor did it intend the prospectus to be a contract. The Department’s rules align with our reading of the Act. See Fla. Admin. Code R. 61B-31.001(1) (“The prospectus shall clearly describe all matters required by Chapter 723, Florida Statutes, and shall not contain other information except as permitted by the [Department] *499 to fully and fairly disclose all aspects of the park and the offer”)- The Act makes the prospectus “part of the contract between the mobile home park owner and the mobile home owner,” Fed’n. of Mobile Home Owners, 683 So.2d at 591, but not an independent contract and certainly not the “supreme governing document.”
As a result, Ms. Cashin has no independent rights under the Prospectus. Her rights are provided by the Act and the Lifetime Lease. Thus, one of the questions before us is whether the Act requires Tara Woods, as the mobile home park owner, to “clearly inform” a resale home buyer of her rights under section 723.059 of the Act.
As a statutory basis for her lawsuit, Ms. Cashin relies on section 723.059(3). Section 723.059, titled “Rights of purchaser,” defines the rights of a resale purchaser within a mobile home park:
(3) The purchaser of a mobile home who becomes a resident of the mobile home park in accordance with this section has the right to assume the remainder of the term of any rental agreement then in effect between the mobile home park owner and the seller and shall be entitled to rely on the terms and conditions of the prospectus or offering circular as delivered to the initial recipient.
(4) However, nothing herein shall be construed to prohibit a mobile home park owner from increasing the rental amount to be paid by the purchaser upon the expiration of the assumed rental agreement in an amount deemed appropriate by the mobile home park owner, so long as such increase is disclosed to the purchaser prior to his or her occupancy and is imposed in a manner consistent with the initial offering circular or prospectus and this act.
§ 723.059(3), (4).
In the final judgment, the circuit court interpreted section 723.059 not as a statute delineating Ms. Cashin’s rights but as a statute imposing duties upon Tara Woods. In doing so, the court read section 723.059 as requiring Tara Woods to (1) “clearly inform [Ms. Cashin] of her rights under Fla. Stat. 723.059 and her prospectus”; (2) “provide her with a copy of the optional lease she had the right to elect to enter into”; and (3) inform Ms. Cashin “of the amount of the base rent, if different, she would have to pay under that option.” Tara Woods argues that these obligations are not part of the Act but are creations of the circuit court.
Both parties agree that Ms. Cashin exercised her right to assume the remaining term of her Seller’s rental agreement and all rights provided thereunder, in accordance with section 723.059(3). They also agree that pursuant to section 723.059(4), Ms. Cashin had a right to be informed of any rental increase prior to her occupancy. That is, Tara Woods had a duty to disclose any rental increase to Ms. Cashin prior to her occupancy. Additionally, any disclosed rent increase was required to be imposed “in a manner consistent with” the Prospectus. § 723.059(4).
Here, although the Prospectus provided to Ms. Cashin was not identical to the prospectus provided to her Seller, it is undisputed that it contained an identical “Increases in Lot Rental Amount” provision. As a result, Ms. Cashin was entitled to rely on that provision of her Prospectus. The Prospectus provides that a rent increase is subject to several factors, one of which is CPI. Other factors affecting the lot rental amount include “[t]he imposition of and/or increases in special use fees, government and utility charges, pass-through charges, recouped costs, and pass-on charges.” Ms. Cashin’s Lifetime Lease provides that rent increases are affected *500 by CPI or market rent. The manner in which rent may be increased is affected, in both instances, by CPI — making the provisions consistent. Further, the Department approved the Lifetime Lease executed by Ms. Cashin as part of its statutory duties pursuant to the Act. See § 723.011(l)(d) (tasking the Department with approving amendments to prospectuses and their attachments); § 723.012(14) (requiring lease agreements to be attached to prospectuses). Thus, Ms. Cashin’s rights under section 723.059, as applicable to the facts of this case, were the right to assume the remaining term of her Seller’s lease and rights thereunder and the right to rely on the terms of her Seller’s prospectus.
To the extent the court’s order requires Tara Woods to provide a copy of a seller’s prospectus to a resale home buyer, that is error. Section 723.011(2) requires the mobile home park owner to provide a copy of an approved prospectus, along with all attachments thereto, to each prospective lessee. See Fed’n. of Mobile Home Owners, 683 So.2d at 593 (“The mobile home park owner is statutorily obligated to provide tenants with an ‘approved’ prospectus, and cannot enter into a binding rental agreement until after providing the prospective tenant with an ‘approved’ prospectus”); see also § 723.014(1) (“If a prospectus ... was not provided to the prospective lessee prior to execution of the lot rental agreement ... the rental agreement is voidable by the lessee until 15 days after the receipt by the lessee of the prospectus.... ”). Section 723.059(3) states only that a resale home buyer “shall be entitled to rely on the terms and conditions of the [seller’s] prospectus”; it imposes no affirmative duty upon the mobile home park owner. Section 723.059(4) imposes a disclosure obligation on the mobile home park owner as to increases in rent and requires that an increase conform with the manner prescribed in the seller’s prospectus. It does not impose an affirmative duty to provide the resale home buyer with the seller’s prospectus.
The second duty imposed by the court is to provide Ms. Cashin with a copy of the optional lease she had the right to elect to enter into. Nothing in the Act supports this reading of section 723.059. Cf. § 627.727(1), Fla. Stat. (2011) (requiring insurance policies to include certain coverage unless insured rejects in writing the coverage such that insured has the “privilege of rejecting” it). Nor does the Act support the court’s conclusion that Tara Woods was required to inform Ms. Cashin of the difference in lot rental amount between the Lifetime Lease and the Seller’s lease. See Wexler v. Rich, 80 So.3d 1097, 1101 (Fla. 4th DCA 2012) (concluding bank was not required to explain significance between types of account ownership where account agreements contained options); Beckett v. Dep’t. of Fin. Servs., 982 So.2d 94, 101 (Fla. 1st DCA 2008) (“If the [legislature had intended to require particular means or procedures for obtaining informed consent, it could have done so”).
In reaching these conclusions, we reiterate what Florida courts have long held: the legislature is presumed to understand the meaning of the words it chooses, Overstreet v. State, 629 So.2d 125, 126 (Fla.1993), and those words are to be ascribed their plain and ordinary meaning, see Velez v. Miami-Dade Cnty. Police Dep’t., 934 So.2d 1162, 1164-65 (Fla.2006). Here it is obvious that the legislature understands the differences between rights and obligations; section 723.022 defines the mobile home park owner’s general obligations and sections 723.054, 723.055, and 723.059 define various rights of the mobile home owner. And because the legislature used *501 words with clear meanings — rights, obligations, disclose, and provide — the courts “may not invade the province of the legislature and add words which change the plain meaning of the statute.” Metro. Dade Cnty. v. Bridges, 402 So.2d 411, 414 (Fla.1981). Nor may the courts otherwise extend or modify the words or their meanings. Velez, 934 So.2d at 1164-65.
Because we do not read the circuit court’s order as requiring a mobile home park owner to provide legal advice regarding the mobile home owner’s rights, we need not address that issue. We note, however, that by requiring every prospectus to include, “in conspicuous type,” the admonition to “seek legal advice” should any questions arise regarding a mobile home owner’s legal rights, the legislature clearly contemplated a mobile home owner’s potential need for such advice. See § 723.012(1).
2. Waiver
Tara Woods’ final argument on appeal addresses the circuit court’s conclusion that Ms. Cashin did not voluntarily consent to the Lifetime Lease and did not waive her statutory rights. As discussed above, the circuit court granted Ms. Cashin rights and extended Tara Woods’ obligations beyond those provided by the Act. By doing so, the court complicated what would otherwise have been a simple waiver case.
Because the circuit court’s findings of fact are supported by competent, substantial evidence in the record, and are largely included in the background herein, we do not address them.
Although not conceding that Ms. Cashin had rights beyond those delineated by the Act, Tara Woods contended in its affirmative defenses and at trial that Ms. Cashin had waived any rights she may have had with regard to the terms of her Lifetime Lease. And as Lifetime Leases governed by the Act are contracts like any other, general contract law applies. See Miren Int’l. Lodging Corp. v. Manley, 982 So.2d 1203, 1204 (Fla. 5th DCA 2008). To prove waiver, Tara Woods was required to establish “the existence at the time of the waiver of a right, privilege, or advantage; the actual or constructive knowledge thereof; and an intention to relinquish that right, privilege, or advantage.” See Winans v. Weber, 979 So.2d 269, 274 (Fla. 2d DCA 2007) (citing Arbogast v. Bryan, 393 So.2d 606, 608 (Fla. 4th DCA 1981)). Knowledge of the right is critical. Id.
As discussed above, for purposes of this appeal, the only statutory right Ms. Cashin had was the right to rely on the terms of her Seller’s prospectus. And again, it is undisputed that the relevant provisions pertaining to rental increases in both the Seller’s prospectus and the approved Prospectus given to Ms. Cashin contained identical language.
As to Ms. Cashin’s “actual or constructive knowledge” of her right, “Florida law has long held that a party to a contract is ‘conclusively presumed to know and understand the contents, terms, and conditions of the contract.’ ” Rocky Creek Ret. Props., Inc. v. Estate of Fox, 19 So.3d 1105, 1108-09 (Fla. 2d DCA 2009) (quoting Stonebraker v. Reliance Life Ins. Co. of Pittsburgh, 123 Fla. 244, 166 So. 583, 584 (1936)). “Florida adheres to the principle that a ‘party has a duty to learn and know the contents of a proposed contract before [s]he signs’ it.” Wexler, 80 So.3d at 1100-01 (quoting Mfrs.’ Leasing, Ltd. v. Fla. Dev. & Attractions, Inc., 330 So.2d 171, 172 (Fla. 4th DCA 1976)). Therefore, a party is “‘assumed to have known, and [is] charged with the knowledge, of the provisions incorporated into the contract [she] executed.’ ” Breckenridge v. Farber, 640 So.2d 208, 211 (Fla. *502 4th DCA 1994) (quoting Marthame Sanders & Co. v. 400 West Madison Corp., 401 So.2d 1145, 1146 (Fla. 4th DCA 1981)). “[The] alleged inability to understand the Agreement does not vitiate her assent to that Agreement in the absence of some evidence that she was prevented from knowing its contents.” Rocky Creek, 19 So.3d at 1108-09.
Citing section 723.059(8), Ms. Cashin’s Prospectus expressly notified her “that upon the expiration of the assumed rental agreement,” Tara Woods reserved the right to increase rent “with such increase being imposed in the manner disclosed in the Prospectus delivered to the initial recipient.” Although the Prospectus does not indicate it, this language is a quote from section 723.059(4). As a result, Ms. Cashin was put on notice that any rent increase subsequent to the expiration of her Rental Assumption Agreement would be made in a manner consistent with the terms of the Prospectus. And nothing in sections 723.059(3) or (4) requires a verbal explanation of the resale buyer’s rights. Therefore, the circuit court’s conclusion that “the right to rely on her Seller’s prospectus” was not disclosed to Ms. Cash-in is in error. This error is compounded by the court’s conclusion that Ms. Cashin did not voluntarily consent to the terms of the Lifetime Lease and waive her right under section 723.059(3).
We reiterate that the Department approved not only the Prospectus provided to Ms. Cashin but also the Lifetime Lease attached to it. The final page of that Lifetime Lease expressly, unambiguously, and conspicuously advised Ms. Cashin that she did not have to accept the Lifetime Lease, that it only applied to those homeowners who consented to it, that the Lifetime Lease contained provisions different from those of the Prospectus, and that those differences “may affect the lot rental amount.” The Lifetime Lease also provides that “[t]he relationship between Homeowner and Community Owner shall be subject to the terms of Chapter 723, Florida Statutes.” Moreover, by reading the terms of the Rental Assumption Agreement and those of the Lifetime Lease it is clear that the rent provisions differed in a minor way not impacting the overall manner in which rent increases could be imposed.
“Freedom of contract ‘includes freedom to make a bad bargain.’ ” Wexler, 80 So.3d at 1100 (quoting Posner v. Posner, 257 So.2d 530, 535 (Fla.1972)). Ms. Cashin does not contend she had no opportunity to read the documents she signed. In fact, testimony at trial supports the finding that Ms. Cashin signed the Lifetime Lease on August 29, 2007, twenty-one days after she first received it. Testimony also established that Ms. Cash-in did not ask questions about the documents she received and signed. And Ms. Cashin does not argue that she was under pressure to execute the documents. Ms. Cashin’s signatures on each of the pertinent documents, but particularly on the Lifetime Lease, evince her intention to relinquish her right and consent to the Lifetime Lease.
III. Conclusion
Tara Woods complied with its statutory obligations to Ms. Cashin, a resale home buyer, under Florida’s Mobile Home Act. The documents presented to and executed by Ms. Cashin met the requirements of the Act. As a result, and notwithstanding the circuit court’s erroneous interpretation of the Act, the issue in this case is simply one of waiver. The rent increase between Ms. Cashin’s assumption of the Seller’s lease and her execution of the Lifetime Lease was clearly disclosed, and the Lifetime Lease conspicuously advised that it was *503 optional. Ms. Cashin was in no sense pressured into signing the Lifetime Lease; she took three weeks to review and execute it. She had the time, and indeed was admonished, to seek legal advice should she have any questions. Ms. Cashin was specifically advised of the matter about which she now complains, and she acknowledged her awareness in writing. Ms. Cashin voluntarily consented to the Lifetime Lease. For these reasons, we reverse the final judgment and supplemental final judgment and remand with directions that judgment be entered in favor of Tara Woods.
Reversed and remanded with instructions.
KHOUZAM, J., and MAKAR, SCOTT D., Associate Judge, Concur.

. Ms. Cashin’s lot rental agreement is referred to as a Lifetime Lease because the term *496 of the agreement is the lifetime of the Homeowner and the lease is to remain in effect until the Homeowner’s or Homeowner’s spouse’s death or until the sale of the home or transfer of title to the home.